IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HILTON MINCY,** | **CIVIL ACTION NO. 1:05-CV-0292** |
| Plaintiff | (Judge Conner) |
| v. | |
| **KENNETH G. CHMIELEWSKI,** et al., | |
| Defendants | |

**MEMORANDUM**

Presently before the court is plaintiff Hilton Mincy's ("Mincy") motion for a preliminary injunction pursuant to FED.R.CIV.P. 65(a) and request for a transfer. (Doc. 69). For the reasons that follow, the motion will be denied.

**I. Factual Background**

On November 10, 2004, Mincy, an inmate incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), witnessed an altercation between his cell mate and a correctional officer. On November 12, 2004, he was ordered to report to the prison security office to discuss the incident. Mincy stated that the correctional officer verbally provoked his cell mate and that the officer had "taken the first swing." (Doc. 21, p. 1).

According to Mincy, prison authorities believe that he conspired with his cell mate to assault the officer. (Doc. 21, p. 2). As a result, he was subjected to increased scrutiny in the form of frequent cell visits and pat searches. He was also informed that he was going to be moved to D-block which is known throughout the prison as

the block that houses sex offenders and rapists.  He immediately filed a grievance for harassment and retaliation.  (Doc. 21, p. 2).  The following day, he was moved to D-block and was placed in the "trouble watch cell" directly across from the officer's desk.  (Id.)

On November 27, 2004, Mincy was transferred to the Restrictive Housing Unit ("RHU") and placed in administrative custody pending a security office investigation of threats against an officer.  Mincy alleges that RHU officers refused to provide him with basic personal hygiene items and stationery.  He also claims that he was denied grievance forms.  The following day, he received a misconduct for disobeying an order and interfering with count.

He claims that in preparation for the misconduct hearing, he asked two corrections officer, Murphy and Vance, to sign his witness form, but after reading Mincy's account of the events, they refused to sign it.  (Doc. 21, p. 3).  Vance took the form and refused to give it back to Mincy.

At the time of the misconduct hearing, his witness form was missing and Mincy's request for witnesses was denied.  He was found guilty and "given 60 days." (Doc. 21, p. 4).  He appealed the misconduct to final review and a rehearing was ordered.  (Doc. 21, p. 6).  Mincy was again found guilty.  He again appealed.  On final review, the matter was remanded back to the Program Review Committee ("PRC"). (Doc. 21, p. 7).  The PRC denied the appeal on remand.  Mincy continued the appeal process and his appeal was denied on final review.

He alleges that while in the RHU, he was subjected to other forms of harassment, including denial of grievance forms, denial of shower privileges, and unnecessary placement in a "psych" cell which had alternating blasts of hot and cold air and was without water, toilet paper, and soap.  He was released from the RHU on January 20, 2005.

On April 3, 2005, Mincy found rocks in his food.  On April 18, 2005, as a result of an investigative cell search, he was issued a misconduct for possession of contraband.  (Doc. 70, pp. 6-7).   In the context of the misconduct hearing, his request to call his former cell mate as a witness was denied and he was denied a copy of the hearing officer's report.  Also, while in the RHU, he was placed in a "hard cell" and was continually denied access to the RHU mini-law library.[1]

Mincy contends that as a consequence of exercising his First Amendment right to free speech, he has been subjected to the above retaliatory and abusive actions while incarcerated at SCI-Mahanoy.  (Doc. 69, p. 3).   He seeks to enjoin the defendants from harassing him, and requests a transfer to a different correctional facility.  (Doc. 69, p. 8).

## II.     Discussion

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances.  See American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F. 3d 1421, 1426-27 (3d Cir. 1994).  "Four factors govern

---

[1]According to Mincy there is no desk or stool in a hard cell.   (Doc. 70, p 8).

a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (en banc ). See also Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999). 'A district court should endeavor to balance these four factors to determine if an injunction should issue.' Allegheny Energy, 171 F.3d at 158 (citing American Civil Liberties Union of New Jersey, 84 F.3d at 1477 n. 2.)." Brian B. v. Commonwealth of Pennsylvania Dept. of Educ. 51 F. Supp. 2d 611, 619 -620 (E.D.Pa. 1999). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." In Re Arthur Treacher's Franchise Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982). It is the moving party that bears the burden of satisfying these factors. United States v. Bell, 238 F.Supp. 2d 696, 699 (M. D. Pa. 2003)(internal citations omitted). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 311 (E. D. Pa. 1993).

"In the prison context, requests for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration. . . . Further where

a plaintiff requests injunctive relief that would require the court to interfere with the administration of a state prison, the court must consider the principles of federalism in determining the availability and scope of equitable relief." Riley v. Snyder, 72 F. Supp. 2d 456, 459 (D.Del. 1999).

### A.     First Amendment

#### 1. Likelihood of Success on the Merits

Retaliation for expressive activities can infringe upon an individual's First Amendment rights. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Incarcerated persons claiming unconstitutional retaliation must show (1) that they engaged in conduct protected by the First Amendment, (2) that they suffered an "adverse action" by prison officials, and (3) that impairment of the expressive conduct was "a substantial or motivating factor" for the official action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001): Breiner v. Litwhiler, 245 F. Supp. 2d 614, 632 (M.D. Pa. 2003), aff'd, 98 Fed. Appx. 75 (3d Cir. 2004). Once an inmate shows that the protected conduct was a substantial factor in the adverse action, prison officials may defeat liability by showing that they would have taken the same action absent the alleged improper motivation. Rauser, 241 F.3d at 333.

It is clear that the filing of grievances by a prison inmate constitutes protected conduct that falls within the ambit of the First Amendment. See, e.g., Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Less clear is whether the actions purportedly taken in retaliation for this conduct are sufficiently "adverse" to constitute constitutionally cognizable infringement. Official actions are considered

"adverse" only if they would "deter a person of ordinary firmness from exercising his First Amendment rights." Allah, 229 F.3d at 225 (internal quotations omitted)(quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).

The actions Mincy identifies as adverse are the denial of requests slips and grievance forms, rocks found in his food, an investigative search that resulted in the issuance of misconduct, refusal to provide him with a copy of a report following his misconduct hearing, denial of RHU library privileges, and placement in an RHU "hard cell." (Doc. 70, pp. 7-8).

The record does not support Mincy's contention that he has been denied request slips and grievance forms. The combined records of this action and Mincy's subsequent case, Mincy v. Klem, 1:05-CV-1458, demonstrate that Mincy filed approximately five grievances, (Doc. 21, pp. 18, 25, 32, 51; Mincy v. Klem, 1:05-CV-1458, Doc. 6-2, p. 1), and numerous request slips, (Mincy v. Klem, 1:05-CV-1458, Doc. 6-2, pp. 9-10, 13-14, 29-34, 36-37).

As concerns the remaining "adverse actions," Mincy fails to offer evidence that would lead the court to conclude that the actions were retaliatory. He filed a grievance alleging that rocks were placed in his soup by "either a line worker or an RHU officer." (Mincy v. Klem, 1:05-CV-1458, Doc. 6-2, p. 1). However, an investigation revealed that there was no evidence of negligence on the part of kitchen staff, or that the rocks were placed in his food intentionally. (Id. at p. 21).

Mincy also alleges that he received a misconduct as a result of the investigative search of his cell and that the disciplinary sanction resulted in

placement in an RHU "hard cell" and denial of RHU library privileges. Notably, this misconduct was appealed to final review and Mincy's contention that the misconduct was issued in retaliation for having filed a grievance concerning rocks in his food was found to be without merit. (<u>Mincy v. Klem</u>, 1:05-CV-1458, Doc. 6-2, p. 1, 21, 27). He also claims that he was denied a copy of the hearing officer's report following his hearing. However, in his appeal of the misconduct, he admitted that he did not get a copy because he left the hearing in disgust. (<u>Id</u>. at p. 7). When he later attempted to get a copy, the hearing examiner advised him that he did not keep copies of the reports. Nonetheless, the lack of a copy had no impact on Mincy's ability to appeal the finding of guilty.

At this stage of the proceeding, Mincy has failed to establish that he suffered adverse action as a result of the exercise of his First Amendment rights. Consequently, the court cannot conclude that Mincy has a likelihood of success on the merits of his retaliation claim.

### 2. **Irreparable Harm**

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. <u>See Continental Group, Inc. v. Amoco Chems. Corp.</u>, 614 F. 2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc</u>, 882 F.2d 797, 801 (3d Cir. 1989). Speculative injury does not constitute a showing or irreparable

harm.  Continental Group, Inc, 614 F. 2d at 359; see also Public Serv. Co. v. West Newbury, 835 F. 2d 380, 383 (1st Cir. 1987).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Instant Air Freight, 882 F. 2d at 801 (quoting Sampson v. Murray, 415 U. S. 61, 90 (1974)).

"The assertion of First Amendment rights does not automatically require a finding of irreparable injury."  Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir. 1989).  "Plaintiff [ ] must show 'a chilling effect on free expression.' "  Id.

In the case *sub judice*, the record discloses that Mincy has continued to pursue his administrative and court remedies throughout the time period in question.  He has not shown that there was a real or immediate threat to his First Amendment rights.  Hence, irreparable harm has not been established.

### 3.     Possibility of Harm to Others and Public Interest

Mincy's failure to establish both a likelihood of success on the merits and irreparable harm necessarily results in denial of the injunction.  See In Re Arthur Treacher's, 689 F.2d at 1143.  Therefore, the Court declines to consider the remaining factors of the possibility of harm to others and public interest.

**B.     Due Process and Eighth Amendment Claims**

    **1.     Likelihood of Success on the Merits**

        a. Due Process

The court must determine whether Mincy had a protected liberty interest and, if so, what process was mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (1995). "[T]he baseline for determining what is "atypical and significant"-the "ordinary incidents of prison life"-is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706  (3d Cir. 1997)(quoting Sandin, 515 U.S. at 486).

Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Sandin. 515 U.S. at 486; see Griffin, 112 F.3d at 706-07 (finding that fifteen month period of administrative custody did not deprive prisoner of a liberty interest).

The disciplinary sanctions at issue, sixty days of disciplinary segregation, do not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Hence, it is not likely that Mincy will prevail on this claim.

b.      Eighth Amendment

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, Helling v. McKinney, 509 U.S. 25, 32, (1993), it does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S. 1, 9 (1992). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" Tillery v. Owens, 719 F. Supp. 1256, 1262 (W.D. Pa. 1989)(citing, Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Conditions that are not cruel and unusual under contemporary standards are constitutional. Rhodes, 452 U.S. at 348.

The Eighth Amendment prohibits officials from acting with "deliberate indifference" towards a "substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828, 832-34 (1994). A violation is established when a prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The conditions of which Mincy complains include the RHU officers' refusal to provide him with basic personal hygiene items and stationery, and placement in a psych cell without a tolerable temperature, water, toilet paper, and soap. While undoubtedly unpleasant, Mincy has not established that any of these conditions

10

constituted a "substantial risk of serious harm" to his health or safety of which prison officials knew and disregarded.

### 2. Irreparable Harm

As noted above, the availability of adequate compensatory or other corrective relief weighs heavily against a claim of irreparable harm. The due process and Eighth Amendment claims evolved out of Mincy's disciplinary proceedings and his placement in the RHU. It is clear that the disciplinary proceedings have long since concluded and all indications are that he is no longer housed in the RHU. There is no question that the injuries of which Mincy complains are compensable and Mincy cannot rely on the possibility of future harm as speculative injury does not constitute a showing of irreparable harm.   See Continental Group, Inc., 614 F. 2d at 359.

### 3. Weight of Harm and Public Interest

Mincy's failure to establish a likelihood of success on the merits, or irreparable harm, is fatal to his request for an injunction. As such, it is not necessary to consider the remaining factors.

### C. Conclusion

Mincy has failed to meet his burden of satisfying the four factors necessary to obtain an injunction. Accordingly, his application for injunctive relief (Doc. 69) will be denied. Further, his request to be transferred to another facility will be denied. Mincy has no right to be incarcerated in any particular correctional institution. Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976);

Montayne v. Haymes, 427 U.S. 236 (1976). Nor does he have any right to be transferred to any particular facility. Id.

    An appropriate order will issue.

                                  /s/ Christopher C. Conner
                              CHRISTOPHER C. CONNER
                              United States District Judge

Dated:      June 8, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON MINCY,** | : | **CIVIL ACTION NO. 1:05-CV-0292** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **KENNETH G. CHMIELEWSKI,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 8th day of June, 2006, upon consideration of plaintiff's motion for a preliminary injunction and request for transfer (Doc. 69) it is hereby ORDERED that the motion (Doc. 69) is DENIED.

                                              /s/ Christopher C. Conner
                                             CHRISTOPHER C. CONNER
                                             United States District Judge